1    BENJAMIN B. WAGNER
     United States Attorney
2
     ADAIR BOROUGHS
3    Trial Attorney, Tax Division
     U.S. Department of Justice
4    P.O. Box 683, Ben Franklin Station
     Washington, D.C.  20044-0683
5    Telephone:     (202) 305-7546
     E-mail:         adair.f.boroughs@usdoj.gov
6
     Attorneys for the United States of America
7
                IN THE UNITED STATES DISTRICT COURT FOR THE
8
                      EASTERN DISTRICT OF CALIFORNIA
9

10   IN THE MATTER OF THE TAX           )
     LIABILITIES OF:                    )   Civil No.
                                        )
11   JOHN DOES, United States taxpayers, who   )   **MEMORANDUM IN SUPPORT OF *EX***
     during any part of the period January 1,   )   ***PARTE* PETITION FOR LEAVE TO**
12   2005, through December 31, 2010, transferred   )   **SERVE "JOHN DOE" SUMMONS**
     real property in the State of California for   )
13   little or no consideration subject to California   )
     Propositions 58 or 193, which information is   )
14   in the possession of the State of California   )
     Board of Equalization (BOE), sent to BOE   )
15   by the 58 California counties pursuant to   )
     Propositions 58 and 193.           )
16

17
              The United States of America respectfully submits the following Memorandum in
18
     support of its *Ex Parte* Petition for Leave to Serve John Doe Summons:
19
                                    **INTRODUCTION**
20
              This is an *ex parte* proceeding brought by the United States of America, pursuant to
21
     Sections 7609(f) and (h) of the Internal Revenue Code (26 U.S.C.), for leave to serve an Internal
22
     Revenue Service (IRS) "John Doe" summons upon the State of California Board of Equalization
23
     (BOE).  Section 7609(f) provides that a summons which does not identify the person with respect
24
     to whose liability it is issued may be served only after a court proceeding in which the United
25
     States establishes certain factors.  These types of summonses are known as "John Doe"
26
     summonses.  Section 7609(h)(1) provides that a district court in which the person to be
27
     summoned resides or is found shall have jurisdiction to hear and determine any proceeding
28

1    brought under Section 7609(f).  BOE is found in this judicial district, as its primary office is

2    located in Sacramento, California.  Section 7609(h)(2) provides that any determinations required

3    to be made under Section 7609(f) shall be made *ex parte* and shall be made solely on the petition

4    and supporting affidavits.

5                                    **QUESTIONS PRESENTED**

6          Whether, as required by Section 7609(f), the United States of America has demonstrated

7    (1) that the "John Doe" summons which the IRS desires to serve upon BOE relates to the

8    investigation of an ascertainable group or class of persons; (2) that there is a reasonable basis for

9    believing that such group or class of persons may fail or may have failed to comply with any

10   provision of any internal revenue law; and (3) that the information sought to be obtained from the

11   examination of the records or testimony (and the identities of the persons with respect to whose

12   liability the summons is issued) is not readily available from other sources.

13                                       **BACKGROUND**

14   **A. Gift Tax**

15         Pursuant to 26 U.S.C. §§ 2501 and 2512, transfers of property (including real property)

16   may generally be subject to gift tax on the value of the property, to the extent that the property is

17   transferred for less than adequate and full consideration.  Generally, if a taxpayer makes a gift

18   during the taxable year to any donee above the annual per person exclusion amount ($11,000 for

19   tax year 2005, $12,000 for tax years 2006-2008, and $13,000 for tax years 2009-2010), she must

20   file a Form 709 United States Gift (and Generation-Skipping Transfer) Tax Return ("Form 709").

21   26 U.S.C. §§ 2503(b), 6019(a).  A taxpayer has a lifetime credit against gift taxes of $1 million,

22   which is exhausted as the taxpayer makes taxable gifts during life.  26 U.S.C. § 2505.[1]  Form 709

23   is used to report use of this credit and to track the amount of credit remaining for the taxpayer's

24

25
         [1] Section 2505 of the Internal Revenue Code was amended by Tax Relief, Unemployment Insurance
26   Reauthorization, and Job Creation Act of 2010, signed by President Obama on December 17, 2010.  The
     amendments increase the lifetime exemption amount to $5 million for gifts made after December 31, 2010.
27   Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010 at §302, Pub. L. No.
     111-312 (2010).  Because this summons only concerns transfers from January 1, 2005, through December
28   31, 2010, the 2010 amendments are not applicable to the transfers that are the subject of the summons.

                                       - 2 -                            MEMORANDUM

1    use in future years.  Thus, the taxpayer may be required to file a Form 709 to report annual gifts,

2    even where there is no immediate gift tax liability.

3    **B. Estate Tax**

4            The transfer of the taxable estate of a decedent may be subject to an estate tax based on

5    the value of the estate's property that is transferred.  26 U.S.C. § 2001.  Generally, if a decedent's

6    gross estate exceeds a defined amount ($1.5 million for tax year 2005, $2 million for tax years

7    2006-2008, $3.5 million for 2009), the executor or administrator of the estate must file a Form

8    706 United States Estate (and Generation-Skipping Transfer) Tax Return.[2]  26 U.S.C. §§

9    2010(c), 6018.  The estate tax owed includes tax on certain taxable gifts made by the decedent

10   during his lifetime, as reported on Forms 709.  26 U.S.C. § 2001(b).  These taxable gifts made

11   during the decedent's lifetime are specifically what is at issue in this investigation.

12   **C. IRS Compliance Initiative**

13           The IRS has recognized a pattern of taxpayers failing to file Forms 709 for applicable

14   transfers of real property to related parties.  Thus, the IRS launched a compliance initiative to

15   examine taxpayers who failed to file Forms 709 after transferring real property to a related party

16   (other than a spouse).[3]  Attached to this memorandum is a Declaration by Josephine Bonaffini,

17   the Federal/State Coordinator for the IRS Estate and Gift Tax Program ("Bonaffini Declaration"),

18   which describes this compliance initiative and its results thus far.  Many states capture data on

19   such transfers by documenting that no transfer (or excise or stamp) tax was paid to the county or

20   state because the transfer occurred for little or no consideration between related parties.  The IRS

21   _____

22           [2] Section 2010 of the Internal Revenue Code was amended by Tax Relief, Unemployment Insurance
Reauthorization, and Job Creation Act of 2010, signed by President Obama on December 17, 2010.  The
amendments affect exemption rates for individuals who die in 2010 and after.  For individuals that die in

23   2010, estates have the choice of (1) paying no estate tax and applying the carry over basis rules or (2) paying
estate tax based on a $5 million exemption and 35% tax rate and receiving a step-up in the basis of the assets

24   to fair market value.  Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010
§301, Pub. L. No. 111-312 (2010).  For 2011, the exemption amount is $5 million, and for later years the

25   exemption amount is $5 million indexed for inflation.  *Id*. at § 302.

26           [3] The tax code allows a gift tax deduction equal to the value of any property transferred to a spouse
such that no gift tax liability exists for gifts to a spouse.  26 U.S.C. § 2523(a).  The John Does summons

27   should not capture information on transfers of real property between spouses, as California Propositions 58
and 193 do not cover gifts between spouses.

28

1   has attempted to obtain such information from states and counties as a part of its compliance

2   initiative.  Most of the states and counties have voluntarily disclosed the requested information to

3   the IRS.  Specifically, the IRS has requested and received information at either the state or county

4   level in the following states: Connecticut, Florida, Hawaii, Nebraska, New Hampshire, New

5   Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington,

6   Wisconsin.  (Bonaffini Decl. at ¶ 8.)

7   **D. California Propositions 58 and 193**

8         Because of Proposition 58 and 193, California has this information in a format which

9   separates it from records of all other real property transfers for a particular year.  In general,

10  California property tax is calculated based on the assessed value of real estate.  Proposition 13,

11  passed in 1978, limits annual increases to assessed values of land to the inflation rate or 2%,

12  whichever is less, unless there is a change in ownership.  CAL. CONST. art. 13A. § 2.  As a result,

13  property taxes can increase dramatically after a sale or transfer.

14        Proposition 58, effective in 1986, excludes from reassessment certain real property

15  transferred between parents and children, leaving in place the 2% cap on increases in assessed

16  land value.  CAL. CONST. art. 13A. § 2(h)(1); CAL. REV. & TAX. CODE § 63.1.  Proposition 193,

17  effective in 1996, does the same for real property transfers between grandparents and

18  grandchildren, if the middle generation (parents) is deceased.  CAL. CONST. art. 13A. § 2(h)(2);

19  CAL. REV. & TAX. CODE § 63.1.  However, to obtain this exclusion, the parties to the transfer

20  must file a Form BOE-58-AH, Claim for Reassessment Exclusion for Transfer Between Parent

21  and Child or a Form BOE-58-G, Claim for Reassessment Exclusion for Transfer Between

22  Grandparent and Grandchild, with the county assessor's office for the county in which the

23  property is located.  (Bonaffini Decl. at ¶ 14.)  Each county forwards to BOE the information

24  from these two forms, and the BOE maintains a statewide database with the critical information

25  from the forms: the name and social security names of the grantor, the transfer date, a legal

26  property description, and the assessed value of the property at the time of the transfer.  (*Id.*)

27

28

1    Thus, the IRS asked BOE for this information.  However, BOE would not disclose this

2    information without a summons because state law prohibits it from disclosing information linked

3    to an individual without written consent unless the disclosure is required by law.[4] CAL. CIV.

4    CODE § 1798.24.

5                                        **DISCUSSION**

6    The Internal Revenue Service is conducting an investigation into United States taxpayers[5]

7    who transfer real property for little or no consideration to non-spouse family members.  In

8    furtherance of this investigation, the IRS is requesting authorization to serve a "John Doe"

9    summons on BOE.  As explained in detail below, the proposed summons meets the necessary

10   elements of a "John Doe" summons.

11   **A.  Legal Standard**

12   Section 7601 of the Internal Revenue Code requires the Secretary of the Treasury to

13   "cause officers or employees of the Treasury Department to proceed, from time to time, through

14   each internal revenue district and inquire after and concerning all persons therein who may be

15   liable to pay any internal revenue tax."  Section 7602 authorizes the Secretary to summon records

16   and testimony for that purpose.  Specifically, Section 7602 authorizes the Secretary "[f]or the

17   purpose of ascertaining the correctness of any return, making a return where none has been made,

18   [or] determining the liability of any person for any internal revenue tax . . . [t]o summon . . . any

19   person having possession, custody, or care of books of account containing entries relating to the

20   business of the person liable for tax . . ., or any other person the Secretary may deem proper, to

21   appear . . . and to produce such books, papers, records, or other data, and to give such testimony,

22

23        [4] Other exceptions not relevant here are also listed in CAL. CIV. CODE § 1798.24.

24        [5]The term "United States taxpayer" refers to all persons subject to tax in the United States.  All United
     States citizens and resident aliens are liable for federal income taxes on income received from sources within
25   or without the United States; nonresident aliens are only liable for taxes on income from sources within the
     United States.  Pursuant to Section 7701(b)(1), an alien may be treated as a resident for purposes of income
26   taxation if he (1) is a lawful permanent resident of the United States, (2) meets the substantial presence test
     (this is an objective test in which the number of days the alien is present in the United States are counted),
27   or (3) makes an election to be treated as a resident. *See Lujan v. Comm'r*, T.C. Memo 2000-365, 2000 WL
     1772503 (2000).

28
                                        - 5 -                          MEMORANDUM

1  under oath, as may be relevant or material to such inquiry."

2  Section 7602 is the Internal Revenue Service's principal information-gathering authority,

3  and, accordingly, the courts have broadly construed it in light of its intended purpose of

4  furthering the effective conduct of tax investigations.  Thus, the courts have repeatedly rejected

5  attempts to circumscribe or thwart the effective exercise of the IRS' summons power.  *See, e.g.,*

6  *United States v. Euge*, 444 U.S. 707, 715-716 (1980); *United States v. Bisceglia*, 420 U.S. 141

7  (1975); *Couch v. United States*, 409 U.S. 322, 338 (1973).

8  In *Bisceglia*, the Supreme Court held that Sections 7601 and 7602 empowered the IRS  to

9  issue a "John Doe" summons to a bank to discover the identity of a person who had engaged in

10  certain bank transactions.  This authority was explicitly codified in Section 7609(f) of the

11  Internal Revenue Code, as added by the Tax Reform Act of 1976.  Section 7609(f) provides as

12  follows:

13  Any summons . . . which does not identify the person with respect to
whose liability the summons is issued may be served only after a court proceeding
14  in which the Secretary establishes that –
(1) the summons relates to the investigation of a particular person or
15  ascertainable group or class of persons,
(2) there is a reasonable basis for believing that such person or group or class of
16  persons may fail or may have failed to comply with any provision of any internal
revenue law, and
17  (3) the information sought to be obtained from the examination of the records or
testimony (and the identity of the person or persons with respect to whose liability
18  the summons is issued) is not readily available from other sources.

19
26 U.S.C. § 7609(f).  Pursuant to 26 U.S.C. § 7609(h), the determination to be made by the Court
20
"shall be made *ex parte* and shall be made solely on the petition and supporting affidavits."
21
**A.     The Investigation Is Related to an Ascertainable Class**.
22
As required by Section 7609(f)(1), the group or class of persons to be investigated here is
23
ascertainable – United States taxpayers who, during any part of the period January 1, 2005,
24
through December 31, 2010, transferred real property in the State of California for little or no
25
consideration subject to California Propositions 58 or 193.
26
This class is readily ascertainable by BOE.  As explained in the Bonaffini Declaration,
27
BOE, to obtain the benefit of Proposition 58 and 193, the parties to the transfer must file
28
MEMORANDUM

1 | particular forms with the county assessor's office for the county in which the property is located.

2 | (Bonaffini Decl. at ¶ 14.)  Each county in California forwards to BOE the information from these

3 | two forms, and the BOE maintains a statewide database with the critical information from the

4 | forms: the name and social security names of the grantor, the transfer date, a legal property

5 | description, and the assessed value of the property at the time of the transfer.  (*Id*.)  Thus, BOE

6 | can readily identify which of the reported transfers str within the ambit of the John Doe class.

7 | **B.      Reasonable Basis Exists for the Belief That the Unknown Persons May Fail, or May**

8 | **Have Failed to Comply with the Internal Revenue Laws**

9 | With respect to the second requirement, set forth in Section 7609(f)(2), the Bonaffini

10 | Declaration reflects a reasonable basis for believing that the unknown persons whose identities

11 | are sought by the summonses may fail, or may have failed, to comply with one or more

12 | provisions of the internal revenue laws.

13 | The reasonable basis standard does not require that the IRS have evidence of a tax

14 | violation, only that "the facts surrounding a transaction suggest the probable occurrence of

15 | reporting errors."  *Matter of Does*, 671 F.2d 977, 980 (6th Cir. 1982); *see also United States v.*

16 | *Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302, 306 (3d Cir. 1981)(holding the reasonable basis

17 | standard met by testimony of IRS Revenue Agent that the transactions at issue "are inherently

18 | susceptible to tax error"); *United States v. Island Trade Exchange, Inc.*, 535 F. Supp. 993, 997

19 | (E.D. N.Y. 1982)(same).  As stated by Congress, "[i]t is enough for the Service to reveal to the

20 | court evidence that a transaction has occurred, and that the transaction (in the context of such

21 | facts as may be known to the Service at that time) is of such a nature as to be reasonably

22 | suggestive of the possibility that the correct tax liability with respect to that transaction may not

23 | have been reported."  *United States v. Brigham Young University*, 679 F.2d 1345, 1349 n.6 (10th

24 | Cir. 1982)(quoting H.R. REP. NO. 94-658 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2897, 2897; S.

25 | REP. NO. 94-938 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3439), *vacated for consideration*

26 | *of mootness*, 459 U.S. 1095 (1983).

27

28

Here, to determine the breadth of non-compliance in filing Forms 709, the IRS sampled

ten real estate transfers between apparently related parties in each of seven states. (Bonaffini

Decl. at ¶ 19.)  To get the samples, the IRS requested records of transfers of property within the

states where no transfer tax was paid or where the transfer document indicated that the transfer

was exempt from state tax.  The states compiled a list of these transfers and provided them to the

IRS.  (*Id.*)  From this list, the IRS selected and examined transfers that were likely to be inter-

family gifts, using the criteria such as transfers between parties with the same last name or

transfers explicitly labeled "inter-family transfer."  This sampling showed extremely high non-

compliance[6] rates:

| State | Non-compliance Rate |
| --- | --- |
| Connecticut | 60% |
| Florida | 90% |
| Nebraska | 60% |
| Ohio | 100% |
| Virginia | 90% |
| Washington | 80% |
| Wisconsin | 50% |

(*Id.* at ¶ 20.)  After seeing these non-compliance rates, the IRS Estate and Gift Tax Program

concluded that failure concluded that failure to file required Forms 709 was a widespread issue

and launched a compliance initiative to investigate taxpayers who have transferred real property

to a related party for little or no consideration.  (*Id.* at 10.)

The receipt of similar information from informal requests to states and counties has

resulted in examinations being opened in Hawaii, New Hampshire, New Jersey, North Carolina,

Pennsylvania, and Tennessee, and fifty cases involving this exact issue have been opened in Ohio

alone.  (*Id.* at 21-22.)

---

[6] In this context, non-compliance means failure to report a taxable gift on Form 709 as required under federal law.

- 8 -                              MEMORANDUM

1
2
3
4
5
6
7
8
9

To date, 323 taxpayers have been examined for failing to report  transfers of real property to related parties for little or no consideration, another 217 taxpayers are currently under examination for failing to report transfers of real property to related parties for little or no consideration, and approximately another 250 cases are being researched to determine whether an examination should be opened.  (*Id*. at 23.)   So far, of the 323 taxpayers examined, the IRS has found 97 taxpayers that have failed to report to the IRS on a Form 709, transfers of real property to related parties for little or no consideration, despite the fact that the internal revenue laws require such transfers to be reported.  (*Id*. at 24.)  Thus far, 12 cases have resulted in an assessment because the lifetime gifts of the grantor exceeded $1 million.  (*Id*. at 25.)

10
11
12
13
14

Data obtained from other states captured a number of transfers not required to be reported on a Form 709, such as transfers between spouses and transfers due to divorce decrees.  Because the information requested from BOE is specifically limited to transfers between parents and children and grandparents and grandchildren, the data should yield a higher rate of transactions required to be reported on a Form 709.  (*Id*. at 26.)

15
16
17
18
19
20
21
22
23
24
25
26

The likely similarities between the taxpayers who transferred property for little or no consideration in other states and the John Doe class provide support for the IRS' reasonable belief that the John Does may have failed to file Forms 709 as required by the internal revenue code. *See, e.g., Brigham Young University*, 679 F.2d at 1349-50 (prior audit experience with other contributors that had overvalued "in kind" contributions was a reasonable basis for issuing a John Doe summons for the identity of all "in kind" contributors to Brigham Young University); *United States v. Kersting*, 891 F.2d 1407, 1409 (9th Cir. 1989) (John Doe summons enforced after district court found "the existence of at least one case in which a Tax Court found some of Kersting's programs to be abusive of the tax code."), *overruled on other grounds by United States v. Carter*, 17 F.3d 396 (9th Cir. 1994).  The non-reporting rates in other states suggest "the probable occurrence of reporting errors" in California and form a reasonable basis for the summons. *See Matter of Does*, 671 F.2d at 980.

27
28

MEMORANDUM

**C.      The Identity of Persons in the Class Is Not Readily Available from Other Sources**

With respect to the third and final requirement set forth in Section 7609(f)(3), the information sought (and the identity of the persons with respect to whose tax liabilities the summonses have been issued) is not readily available to the IRS from other sources, but is available from BOE.

In California, BOE is the only agency that maintains information about Proposition 58 and 193 real property transfers in a format which separates it from all other property transfers for a particular year.  (Bonaffini Decl. at ¶ 30.)  The IRS' only option for obtaining this information, other than the John Doe summons at issue, is to search through all property transfers of any kind that occurred in 2005, 2006, 2007, 2008, 2009, and 2010, in the property records of each of California's 58 counties.  Examining every property transfer in California over a five-year period as recorded in fifty-eight different offices to determine which ones are related-party transfers for little or no consideration is in an unreasonable administrative burden on the IRS.  (*Id*. at ¶ 31.)  Because a search would be an unreasonable administrative burden on the IRS, this information is not "readily available" from another source.

**CONCLUSION**

The summons for which the government seeks authorization meets the requirements of a John Doe summons.  Accordingly, the Court should enter an order granting the IRS leave to serve a John Doe summons upon BOE in substantially the form as attached to the Declaration of Josephine Bonaffini as Exhibit A.

Respectfully submitted this 27th day of December, 2010.

BENJAMIN B. WAGNER
United States Attorney

By:      /s/ Adair F. Boroughs
ADAIR BOROUGHS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7546

- 10 -                          MEMORANDUM